## LA GRANDE NAT. BANK *v.* OLIVER.

(165 Pac. 682.)

**Chattel Mortgages—Priorities—Landlord's Lien—Replevin.**

1. Where a landlord had a lien on crops under the terms of the lease to secure promissory notes taken for rent, and gave such notes to a bank for collection, and the bank subsequently with notice of landlord's claim took a chattel mortgage upon the crops, the landlord could have recovered the crops in replevin, alleging himself to be the owner and proving the averment by showing that he had a lien upon the property as against the chattel mortgagee who had actual notice of his claim, although the lien may not have been recorded.

**Landlord and Tenant—Lien for Rent—Proceeds of Property.**

2. By virtue of his qualified property in the crop, the landlord was authorized to follow it as far as he could trace it, and to sue at law for substituted property, and it having been converted into money, his right of property attached to the money at his option to the extent of his lien on the crop from which the cash was derived.

[As to landlord's lien on tenant's property for rent, see note in 119 Am. St. Rep. 122.]

**Setoff and Counterclaim—Subject Matter—Claims Arising on Contract.**

3. Under Section 74, L. O. L., providing that a counterclaim authorized by Section 73 must be one existing in favor of a defendant and against a plaintiff between whom a several judgment might be had in an action arising on contract or any other cause of action arising also on contract, and existing at the commencement of the action, where a landlord took promissory notes from his tenant secured by the terms of the lease by a first lien on the crops and placed such notes

with a bank for collection, and the bank with notice of such lien subsequently took a chattel mortgage on the crops, and when the crops were sold took the money and applied it to the payment of its mortgage instead of crediting it on the notes, in a suit by the bank against the landlord upon a note, the landlord was entitled to assert his claim to the proceeds by way of counterclaim upon an implied contract as for money had and received by the third person to the landlord's use.

Action—Waiver of Tort.

4. The chattel mortgagee having been fully aware of the landlord's property in the money, and having gained possession of the money which belonged to the landlord, although an action in tort for damages would lie upon such transaction, the landlord had an election to proceed upon an implied contract as for money had and received to his use.

From Multnomah: ROBERT G. MORROW, Judge.

This is an action by the La Grande National Bank, a banking corporation, against E. W. Oliver. From a judgment in favor of plaintiff, the defendant appealed. Reversed and new trial ordered.

Department 1.    Statement by MR. JUSTICE BURNETT.

The plaintiff declares in the ordinary form upon a promissory note given by the defendant January 30, 1913, for $1,700, with interest at eight per cent per annum, which it avers "is wholly unpaid, except $16.33, paid on March 27, 1913."

The amended answer, upon which the case was tried, admitted the execution of the note, but denied that it was wholly unpaid, except $16.33, and for new matter stated in substance that the defendant, being the owner of, among others, two notes given by his tenant for rent of the defendant's farm for the years 1910 and 1911, upon the first of which was due $616.64, with interest from October 1, 1910, and upon the other $3,420, with interest since October 1, 1911, deposited them with the plaintiff for collection to his account; that by the terms of the lease the notes were secured by a first lien on all grain that was grown on the demised premises; that at the time he delivered the notes to the plaintiff he

also placed the lease in its custody and likewise informed it that according to the provisions of that document the notes were secured by a first lien on the grain; that afterwards with knowledge of all this the plaintiff took a chattel mortgage from the tenant on the self-same crop to secure its own claim against him; and lastly, that when the grain was sold the plaintiff took the proceeds and instead of applying them to the payment of the defendant's notes left with it for collection, liquidated its own demand against the defendant, absorbing all the proceeds except $16.33, which it only then credited on defendant's note upon which this action is based. The answer further alleges that at the time the proceeds of the crop were collected there was due upon the defendant's notes deposited by him with the plaintiff, $4,109.59, and that after deducting the full amount of the note sued upon, there is due from the plaintiff to the defendant a balance named in the answer for which the latter demands judgment.

The reply denied the new matter in the answer. The Circuit Court refused to allow any proof of the defendant's averments and directed a verdict for the plaintiff for the full amount of the note described in the complaint together with an attorney's fee. From the ensuing judgment the defendant appeals.

REVERSED FOR NEW TRIAL.

For appellant there was a brief over the names of *Mr. James G. Wilson* and *Mr. Turner Oliver,* with an oral argument by *Mr. Wilson.*

For respondent there was a brief over the names of *Mr. Charles H. Finn* and *Mr. W. J. Makelim,* with an oral argument by *Mr. Finn.*

MR. JUSTICE BURNETT delivered the opinion of the court.

According to the bill of exceptions the trial judge seems to have proceeded upon the theory that the diversion by the bank of the proceeds of the sale of the grain from the payment of defendant's lien thereon to the liquidation of its own chattel mortgage upon the same crop was solely a conversion sounding in tort which could not be made the basis of a counterclaim in an action arising upon contract.

1, 2. If the defendant had a lien upon the crop he could have recovered the grain in replevin alleging himself to be the owner thereof and proving the averment by showing the fact that he had a lien upon the property at least as against those who had actual notice of his claim although the same may not have been recorded: *Reinstein* v. *Roberts,* 34 Or. 87. (55 Pac. 90, 75 Am. St. Rep. 564). We note in passing that it is charged in the answer that the plaintiff knew the nature and extent of the defendant's lien upon the grain afterwards included in the plaintiff's chattel mortgage. By virtue of his qualified property in the crop the defendant was authorized to follow it as far as he could trace it and to sue at law for the substituted property: *Terry* v. *Munger,* 8 L. R. A. 216, 218, note. It having been converted into money, the defendant's right of property attached to that money at his option to the extent of his lien on the crop from which the cash was derived.

3, 4. The plaintiff was fully aware of the nature and extent of the defendant's property in the specie, and having gained possession of the money which in equity and good conscience, according to the allegations of the answer, belonged to the defendant, the latter was not compelled to sue in tort for damages arising from the wrongdoing of the plaintiff. He was entitled to

bring an action as for money had and received which
sounds in contract.   As stated in 1 C. J., p. 1033, Sec-
tion 159:

"The rule is well settled that, where personal prop-
erty has been wrongfully taken and converted into
money or money's worth, the owner may waive the
tort and sue the wrongdoer in contract for money had
and received, upon the theory that he ratifies the sale
as made for his benefit and sues to recover the pro-
ceeds as money had and received to his use"—citing
many authorities.

In such cases the law implies a promise, or in other
words, a contract on the part of the recipient of the
money to pay it to the one to whom it justly belongs.
Some precedents illustrating various conditions under
which the action for money had and received will lie
are collated in *Wagener* v. *United States National
Bank,* 63 Or. 299 (127 Pac. 778, 42 L. R. A. (N. S.)
1135).   True indeed it is, that an action for damages
would lie upon such a transaction; but the one who is
rightly the owner of the money has the election to pro-
ceed upon the implied contract as for money had and
received and the authority to choose is vested in him.
The other party cannot elect that he himself shall be
sued for the tort and not upon the implied contract.

The action here being upon a note is one arising on
contract and it is said in Section 74, L. O. L., in its
amended form that

"the counterclaim mentioned in section 73 must be one
existing in favor of a defendant and against a plain-
tiff between whom a several judgment might be had in
the action and arising out of one of the following
causes of action. * * 2. In an action arising on con-
tract, any other cause of action arising also on con-
tract, and existing at the commencement of the action."

Embodied in the answer, therefore, we have a state-
ment of facts out of which the law raises the implied

contract on the part of the plaintiff to pay to the defendant the money derived from the crop which was burdened by the defendant's lien to the extent of that encumbrance. The situation thus is one to which the statute above quoted applies and the matter stated in the answer amounts to a "cause of action arising also on contract" within the meaning of the code.

The matter is plain: If we suppose that the lien of the defendant had been foreclosed making the plaintiff a party defendant to the proper proceeding for that purpose, and that in pursuance thereof the grain had been sold, there can be no question to whom the money in the first instance would have belonged at least covering the defendant's lien upon the property. The only disposition which rightly could have been made in such a case would have been first to pay the defendant the amount of his notes which he left with the plaintiff for collection and next to apply the surplus, if any, to the liquidation of the plaintiff's chattel mortgage. According to the averments of the answer the plaintiff, in substantially such a juncture, diverted the money from the satisfaction of the defendant's lien to the payment of its own inferior claim thus carrying the proceeds into its own possession with the result that it had and received to the use of the defendant the amount of his notes in its hands to be collected making itself amenable to an action arising on the contract which the law imputes to it to pay to the defendant what it had thus received. The court was in error in refusing to allow the defendant to prove the allegations of its answer. The judgment is reversed for a new trial.                REVERSED FOR NEW TRIAL.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE HARRIS and MR. JUSTICE MCCAMANT concur.