Argued and submitted September 19, 1990, reversed and remanded August 21, reconsideration denied November 6, petition for review allowed December 31, 1991 (312 Or 554)

Charles O. PORTER,
*Respondent,*

*v.*

Reginald Robert HILL,
*Appellant.*

(16-88-08912; CA A61074)

815 P2d 1290

Jeff Price, Portland, argued the cause and filed the briefs for appellant.

John F. Kilcullen, Eugene, argued the cause for respondent. With him on the brief were Richard A. Roseta and Brown, Roseta, Long & McConville, Eugene.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Warren, P. J., dissenting.

## EDMONDS, J.

Plaintiff, an attorney, brought this action against defendant, a former client, to collect fees for services rendered. Defendant counterclaimed, contending that plaintiff had violated the Unlawful Debt Collection Practices Act (UDCPA), ORS 646.639 or ORS 646.641, and the federal Truth In Lending Act (TILA), 15 USC § 1601 *et seq* (TILA). Plaintiff moved to dismiss defendant's counterclaims under ORCP 21A.(8). The trial court granted plaintiff's motions, and defendant appeals. We reverse.

Initially, plaintiff filed a complaint in which he alleged that the reasonable value of his services was $26,623.25, plus late payment charges. Defendant filed an answer, affirmative defenses and counterclaims. Plaintiff amended his complaint and alleged that the reasonable value of the services he provided to defendant was $3,112.75. Defendant then filed an amended answer, adding counterclaims for UDCPA and TILA violations.[1]

■ In the UDCPA counterclaim, he alleges:

"40.

"Plaintiff has recklessly, if not intentionally, and willfully attempted to collect an alleged debt.

"41.

"Plaintiff knows or should have known that the debt does not exist and that he has no actionable right with respect to the alleged debt."

Defendant argues that he states a UDCPA claim under ORS 646.639(2)(k), which provides that a commercial creditor[2]

---

[1] Defendant also counterclaimed, alleging unfair trade practices and intentional infliction of mental distress. On plaintiff's motion, the court dismissed all but the unfair trade practices counterclaim. Thereafter, the jury found in favor of plaintiff on his claim and against defendant on his unfair trade practices counterclaim. Judgment was entered in favor of plaintiff in the amount of $2,772.05, and defendant's other counterclaims were dismissed with prejudice.

[2] ORS 646.639(1)(c) defines "commercial creditor" as

"a person who in the ordinary course of business engages in consumer transactions."

ORS 646.639(1)(b) defines "consumer transaction" as

"a transaction between a consumer and a person who sells, leases or provides property, services or credit to consumers."

commits an unlawful debt collection practice if it

> "[a]ttempt[s] to or threaten[s] to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten[s] to take any action which the debt collector in the regular course of business does not take."

The gist of defendant's counterclaim is that plaintiff filed a lawsuit to collect a debt that was not owing. Plaintiff argues that filing a lawsuit, even if relief is later denied, is not something that UDCPA prohibits.

■ In reviewing a dismissal under ORCP 21A.(8), we assume the truth of all well-pleaded allegations and any facts that might conceivably be adduced as proof of those allegations. *Brennan v. City of Eugene,* 285 Or 401, 405, 591 P2d 719 (1979). To state a UDCPA claim, the party bringing the action must allege facts that show that the credit transaction is covered by UDCPA and that the creditor engaged in practices that violated the act. Defendant's allegations that plaintiff sought the remedy of filing a lawsuit knowing that the debt did not exist falls within the plain language of ORS 646.639(2)(k). The trial court erred when it dismissed the UDCPA counterclaim.

Defendant also asserts that his TILA counterclaim is sufficient to withstand a motion to dismiss. Under the Federal Reserve Board's (FRB) regulations,[3] TILA is applicable to a person

> "(A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 installments * * * and (B) to whom the obligation is initially payable * * *." 12 CFR § 226.2(a). (Footnote omitted.)[4]

---

The parties do not argue that an attorney is not a consumer creditor.

[3] Congress gave the FRB authority to promulgate TILA regulations. 15 USC § 1632(a). FRB regulations are not binding on courts, but they are entitled to deference because of the interpretative powers granted to the agency. *Bright v. Ball Memorial Hospital Associates, Inc.,* 616 F2d 328, 333 (7th Cir 1980).

[4] The regulations also provide:

> "(12) 'Consumer credit' means credit offered or extended to a consumer primarily for personal, family, or household purposes.
>
> "* * * * *
>
> "(14) 'Credit' means the right to defer payment of debt or to incur debt and defer its payment." 12 CFR § 226.2(a).

A person "regularly extends consumer credit" only if credit has been extended more than 25 times in either the preceding or the current calendar year. 12 CFR § 226.2(a)(17)(i) n 3.

The regulations exclude "late payment charges" from the definition of finance charge:

"§ 226.4 Finance Charge

"(a) Definition. The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit * * *.

"* * * * *

"(c) Charges excluded from the finance charge. *The following charges are not finance charges:*

"* * * * *

"(2) Charges for *actual unanticipated late payment,* * * * or for delinquency, default, or a similar occurrence." 12 CFR § 226.4. (Emphasis supplied.)

The official FRB staff commentary sets standards for distinguishing between a late payment and a finance charge:

"1. Late payment charges. * * * In determining whether a charge is for actual unanticipated late payment, * * * factors to be considered include:

" "● The terms of the account. For example, is the consumer *required* by the account terms *to pay the account balance in full each month?* If not, the charge may be a finance charge.

"● The practices of the creditor in handling the accounts. For example, regardless of the terms of the account, does the creditor allow consumers to pay the accounts over a period of time *without demanding payment in full or taking other action to collect?* If no effort is made to collect the full amount due, the charge may be a finance charge." 12 CFR § 226.4, Supp I. (Emphasis supplied.)

■■ TILA was enacted to ensure disclosure of credit terms so that consumers can compare available credit options, avoid the uninformed use of credit and be protected against inaccurate and unfair credit billing. 15 USC § 1601(a). Its provisions, as remedial legislation, are to be construed broadly in favor of consumers in order to implement Congressional intent and

purpose. *Dougherty v. Hoolihan, Neils, and Boland, Ltd.,* 531 F Supp 717, 721 (D Minn 1982).

In his TILA counterclaim, defendant alleges:

"45.

"Plaintiff's original Complaint and the proposed First Amended Complaint alleged that he has extended credit to Defendant with a *finance charge.* The alleged credit is for attorney services primarily provided for Defendant's personal, family or household use.

"46.

"Plaintiff extended such open-ended credit 25 times or more in the year preceding his transaction with Defendant on *billings providing for 'a late payment of 1 1/2% per month, but not less than $1.00, will be added to the balance due on regular and deferred amounts more than 30 days overdue.' "* (Emphasis supplied.)

He also alleges that plaintiff's conduct fell within TILA and that plaintiff did not make certain disclosures as required by the act. Plaintiff argues that the allegations are insufficient to state a claim under TILA, because the bills provided for a "late payment charge" rather than a finance charge.

In determining the sufficiency of defendant's TILA counterclaim, we apply the rule of *Brennan v. City of Eugene, supra.* Although the billings say that the 1 1/2% per month charge for any amounts more than 30 days overdue is a "late payment charge," defendant's counterclaim characterizes it as a "finance charge." He also alleges that plaintiff extended open-ended credit on 25 or more occasions within the year preceding this transaction with a similar notation on the bills. The bills attached to the complaint show partial payments of each monthly billing. When read together, they support a reasonable inference that plaintiff gave defendant the option of either making payment in full or making installment payments, subject to the 1 1/2% monthly charge. Under 12 CFR § 226.4(a) and the FRB staff commentary, the "late payment charge" as alleged may be a finance charge. The trial court erred in dismissing defendant's TILA counterclaim.

Reversed and remanded.

**WARREN, P. J.,** dissenting.

Plaintiff entered into a written fee agreement with defendant, which provided, in part:

"Client will be responsible for filing fees, court costs, costs of special reports, investigation and/or depositions, and witness fees. *Such costs are payable in advance or upon billing by Attorney."* (Emphasis supplied.)

Plaintiff's bills included this paragraph at the bottom:

"A LATE PAYMENT CHARGE OF 1 1/2% PER MONTH, BUT NOT LESS THAN $1.00 WILL BE ADDED TO THE BALANCE DUE ON REGULAR AND DEFERRED AMOUNTS MORE THAN 30 DAYS OVERDUE."

At no time did the parties enter an agreement allowing for partial payments on the account. When a dispute arose over the amounts due, plaintiff brought this action to collect the account. Nevertheless, under the majority's interpretation, plaintiff still could have violated UDCPA and TILA. In reversing the trial court, the majority has misconstrued both acts. Accordingly, I dissent.

Although I agree that the present transaction falls within the scope of UDCPA, I disagree that defendant has alleged facts showing that plaintiff violated the act. The majority holds that filing a lawsuit knowing that the debt does not exist falls within the plain language of ORS 646.639(2)(k). Assuming that to be true, it is irrelevant the dispute here was not over the existence of the debt but over the correct amount owed on a professional services contract. Plaintiff has only initiated a legal process and carried it out to its authorized conclusion.

In any event, creditors pursue "a right or remedy with knowledge or reason to know that the right or remedy does not exist" when they engage in actions prohibited by a statute or an administrative rule in an attempt to collect a debt, *Isom v. PGE,* 67 Or App 97, 677 P2d 59, *rev den* 297 Or 272 (1984), or when they try to collect on a debt in an effort to gain some collateral advantage over the consumer, as in *Rowe v. Bank of the Cascades,* 68 Or App 490, 683 P2d 93 (1984). Neither *Isom* nor *Rowe* supports the broad holding of the majority in this case. If a creditor launches a purely malicious

action to harass a debtor, then the debtor has a claim for wrongful use of civil process under ORS 30.895.[1]

Similarly, I believe that the trial court did not err in dismissing defendant's counterclaim for TILA violations. This transaction falls outside the purview of TILA, because the charge described on the bottom of plaintiff's bill is a late payment charge, not a finance charge. The standards in the official staff commentary — standards on which the majority also relies — identify two factors for determining whether a charge is a late payment charge: First, when the account terms require the consumer to pay the account balance in full each month and, second, regardless of the terms of the account, if the creditor allows the consumer to pay the account over a period of time without demanding payment in full or taking other action to collect. 12 CFR § 226.4, Supp I. Plaintiff both demanded full payment in each monthly billing and brought this action to collect the account.

Nevertheless, the majority concludes that there is a reasonable inference that plaintiff gave defendant the option of either paying in full or paying in installments, subject to a monthly charge. Therefore, it says, the "late payment charge" *could* qualify as a finance charge under 12 CFR § 226.4. However, the majority fails to suggest what else plaintiff should have done. He entered into an agreement requiring defendant pay fees as they become due, sent out billings demanding full payment and brought an action on the account.

I dissent.

---

[1] Such a claim would have been unavailable to defendant in this case, because it can only be brought in an original proceeding, as opposed to a counterclaim. ORS 30.895(3).